IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

COLONY INSURANCE COMPANY; and
COLONY MANAGEMENT SERVICES, INC.                                PLAINTIFFS

VERSUS                                CIVIL ACTION NO. 2:11cv3KS-MTP

ROPERS OF HATTIESBURG, LLC;
ROPERS' ROCKIN' COUNTRY, LLC;
ROPERS OF HATTIESBURG, INC.;
HUNTER DUNAWAY; and LOGAN HATHORN                        DEFENDANTS


<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the court on a Motion to Dismiss **[#9]** filed on behalf of

Ropers of Hattiesburg, LLC; Ropers' Rockin' Country, LLC; Ropers of Hattiesburg, Inc.

("Ropers" or "the Ropers defendants" or "the defendants").  The court, having reviewed

the motion, the response, the briefs of counsel, the pleadings and exhibits on file, and

being otherwise fully advised in the premises finds that the motion is not well taken and

should be denied.  The court specifically finds as follows:


<u>**BACKGROUND**</u>

On or about January 13, 2010, Logan Hathorn was allegedly assaulted and

beaten on Ropers' nightclub premises in Hattiesburg, Forrest County, Mississippi, by

"bouncers" employed by Ropers.  On December 9, 2010, Hunter Logan filed a

Complaint in the County Court of Forrest County, Mississippi, against Ropers of

Hattiesburg, LLC, Roper's Rockin' County, LLC, Kent Miller, and John Doe Defendants,

asserting various claims for relief, including assault, battery, negligence and premises

liability.  The Hathorn Complaint seeks compensatory and punitive damages.

On or about January 14, 2010, Hunter Dunaway was also allegedly assaulted and beaten on Ropers' nightclub premises in Hattiesburg, Forrest County, Mississippi, by "bouncers" employed by Ropers.  On November 23, 2010, Hunter Dunaway filed a Complaint in the County Court of Forrest County, Mississippi, against Ropers of Hattiesburg, LLC, Roper's Rockin' County, LLC, and John Doe Defendants, asserting various claims for relief, including assault, battery, negligence and premises liability. The Dunaway Complaint also seeks compensatory and punitive damages.

Colony issued a policy of insurance to Roper's of Hattiesburg, Inc. with an effective period of coverage from March 15, 2009, to March 15, 2010.   The Subject Policy contains an endorsement entitled "ASSAULT, BATTERY OR ASSAULT AND BATTERY EXCLUSION."  The Subject Policy also contains an exclusion for "bodily injury" or "property damage" which is expected or intended from the standpoint of the insured.  The Subject Policy contains a per occurrence and general aggregate limit of $500,000.

On January 10, 2011, the plaintiffs, citizens of Virginia, filed this suit against the defendants, citizens of Mississippi, based upon diversity jurisdiction and amount in controversy.  Colony requests a declaration from the court that no coverage exists under the Subject Policy for any claims asserted in the underlying tort suits filed by Dunaway and Hathorn, and that as no coverage exits for those claims, Colony has no duty to defend Ropers in those underlying tort suits.

On January 15, 2011, process server Brad Fowler personally served James Rahaim with three copies of the Complaint and a separate Summons for each Ropers

Case 2:11-cv-00003-KS-MTP   Document 18   Filed 03/29/11   Page 3 of 10

entity Defendant.  James Rahaim is the registered agent for service of process for each Ropers entity defendant.  Also on January 15, 2011, Brad Fowler executed three Proofs of Service in connection with his service of process on Ropers.  Mr. Fowler inadvertently indicated service upon Ropers' Rockin' Country, LLC, on each Proof of Service.  Mr. Fowler subsequently corrected this inadvertent error by executing corrected Proofs of Service as to Ropers of Hattiesburg, LLC and Ropers of Hattiesburg, Inc.  The corrected Proofs of Service confirm that Mr. Fowler did personally serve James Rahaim with a separate summons for each Ropers entity.

On January 28, 2011, the Ropers defendants filed their Motion for Additional Time to Respond to plaintiffs' Complaint.  In doing so, Ropers admitted that "Defendants were served on or about January 15, 2011."  On February 21, 2011, Ropers filed the Motion to Dismiss.  Ropers does not contest diversity of citizenship between the parties. Instead, Ropers contends the amount in controversy requirement is not met and also alleges insufficiency of process and/or service of process.

## DISCUSSION AND ANALYSIS

The Ropers defendants have moved for dismissal under Rule 12(b)(1), (4) and (5) of the Federal Rules of Civil Procedure.  A Rule 12(b)(1) motion attacks the court's jurisdiction to hear and to decide any issues in the case and therefore the court must address that at any time during the pendency of the litigation that is asserted or even indeed upon its own motion.  *See Williamson v. Tucker*, 645 F. 2d 404 (5th Cir. 1981).  It is well settled that on a 12(b)(1) motion the court may go outside the pleadings and consider additional facts, whether contested or not and may even resolve issues of

-3-

contested facts.

The defendants have also moved to dismiss for insufficient process and insufficient service of process pursuant to Rule 12(b)(4) and 12(b)(5).   "The party on whose behalf service is made has the burden of establishing its validity."  4B Wright and Miller, *Federal Practice and Procedure* § 1353.  Rule 12(b)(4) is the proper challenge when it is alleged that the Summons and Complaint do not properly name the party on whom the Summons and Complaint is served.  Rule 12(b)(5) is the proper challenge when the wrong party is served with an otherwise proper Summons and Complaint.  "If a misnomer or mistake on the part of the Plaintiff constitutes a fatal defect, that is, a defect of substance and not merely one of form, the process would be void ab initio and . . . there would be, as recognized by Rule 12(b), both insufficiency of process and insufficiency of service of process."  *Sweeney v. Greenwood Index-Journal Co.*, 37 F. Supp. 484 (D.C. S.C. 1941).  *See also* 4B Wright and Miller, *Federal Practice and Procedure* § 1353.  Further Rule 4(h) permits a court, in its discretion, to allow any process or proof of service of process to be amended, and the court may order amendment at any time.  *Smith v. Boyer*, 442 F.Supp. 62 (D.C. W.D.N.Y. 1977).


**<u>Amount in Controversy</u>**

In declaratory judgment actions, such as this one, the amount in controversy "is 'the value of the right to be protected or the extent of the injury to be prevented.'" *Burlington Ins. Co. v. BAL Enters., LLC*, 2007 WL 4293191, at *2 (S.D. Miss. Dec. 4, 2007) (quoting *Hartford Ins. Group. v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) (citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.

1998)).  In insurance coverage disputes, this value is measured by analyzing the insurer's "potential liability under the policy, plus potential attorneys' fees, penalties, statutory damages and punitive damages."  *Hartford Ins. Corp.*, 293 F.3d at 912 (citation and internal quotation marks omitted).  The costs of providing a defense under a policy of insurance are also to be included in determining the amount in controversy in an insurance coverage action.  *See Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 198 (5th Cir. 1976) ("The pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount, . . . .");  *see also Burlington Ins. Co.*, 2007 WL 4293191, at *2; *Monticello Ins. Co. v. Patriot Sec., Inc.*, 926 F. Supp. 97, 99 (E.D. Tex. 1996).

        As the party invoking the court's subject matter jurisdiction, Colony must establish "the amount in controversy by a preponderance of the evidence."  *Sun Life Assurance Co. of Canada (U.S.) v. Fairley*, 485 F. Supp. 2d 731, 734 (S.D. Miss. 2007) (citation omitted).  It is appropriate for this court to look to the underlying tort suits to determine if it is more likely than not that the jurisdictional minimum is met.  *See Hartford Ins.*, 293 F.3d at 911 ("district court properly measured the jurisdictional amount in controversy by the value of the underlying claim"); *Burlington Ins. Co.*, 2007 WL 4293191, at *2 (looking to the amount claimants sought to recover in the underlying action); *Liberty Surplus Ins. Corp. v. Slick Willie's of Am.*, 2007 WL 1795860, at *4 (S.D. Tex. June 21, 2007) ("facially apparent from the underlying state-court petitions that the amount in controversy . . . will likely exceed $75,000"); *Nationwide Mutual Ins. Co. v. Lake Caroline, Inc.*, 2006 WL 2805140, *1 (S.D. Miss. 2006) (amount in controversy "may be determined by reference to the amount sought in state court").

It is "facially apparent" from either the Hathorn Complaint or Dunaway Complaint that the amount in controversy in this action exceeds $75,000. Both Complaints seek "an amount equal to or less than the jurisdictional requirements for filing in th[e] [County] Court . . . sufficient to fully compensate" the Plaintiff. The maximum amount recoverable in Forrest County Court, exclusive of interest and costs, is $200,000. *See* Miss. Code Ann. § 9-9-21(1). Thus, it is clearly "possible" for Dunaway or Hathorn to recover more than $75,000. Further, the specific damages and injuries alleged in the underlying tort suits evidence that the value of the underlying claims "probably" exceeds $75,000. *See Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 773 (5th Cir. 2003) (amount in controversy requirement is met if it is established that "claims probably exceed $75,000").

Both the Hathorn Complaint and Dunaway Complaint seek punitive damages. "It is well-settled that claims for punitive damages are included in calculating the amount in controversy." *Fairley*, 485 F. Supp. 2d at 735 (numerous citations omitted). Moreover, "federal courts in Mississippi have consistently held that a claim for an unspecified amount of punitive damages is deemed to exceed the federal jurisdictional minimum." *Id.* (citing *Brasell v. Unumprovident Corp.*, 2001 WL 1530342, at *2 (N.D. Miss. Oct. 25, 2001) (citing *St. Paul Reins.*, 134 F.3d at 1255; *Marcel v. Pool Co.*, 5 F.3d 81, 84-85 (5th Cir. 1993); *Allstate Ins. Co. v. Hilbun*, 692 F. Supp. 698, 701 (S.D. Miss. 1988)); *see also Jenkins v. Kellogg Co.*, 2009 WL 2005162, at *4 (N.D. Miss. July 6, 2009). T hus, this court finds that the punitive damages claims in the underlying tort suits result in the amount of controversy requirement for this action being met.

The compensatory damages sought in the underlying tort suits also would most

probably result in the amount in controversy requirement being met.  Both the Hathorn Complaint and Dunaway Complaint seek recovery for past and future medical expenses; past and future lost wages; past and future physical pain and suffering; and past and future emotional distress and anxiety.  "[I]t is undisputed that Mississippi juries routinely award damages for pain and suffering and/or mental or emotional damages in excess of $75,000."  *Holmes v. Citifinancial Mort. Co.*, 436 F. Supp. 2d 829, 832 (N.D. Miss. 2006); *see also Doss v. NPC Int'l, Inc.*, 2010 WL 1759153, at *6 (N.D. Miss. Apr. 29, 2010) (taking notice of Mississippi juries routinely awarding such damages in excess of the jurisdictional minimum); *Jenkins*, 2009 WL 2005162, at *4 (same).

The seriousness of the injuries alleged by Hathorn and Dunaway further show that the value of their respective claims exceeds the jurisdictional amount in controversy.  Hathorn claims permanent disfigurement and injuries to his head, face, jaw and eyes as a result of being "brutally assaulted and beaten by the Bouncer" at Ropers' nightclub premises.  Dunaway claims permanent disfigurement and broken and crushed bones about his face and head requiring extensive surgery as a result of being "brutally assaulted and beaten by" Ropers' bouncers.  Other district courts within the Fifth Circuit have valued similar injuries in excess of the minimum required amount in controversy.  *See Liberty Surplus Ins.*, 2007 WL 1795860, at *4 ("case involves a plaintiff who suffered facial and head injuries from a fight in Slick Willie's parking lot"); *Monticello Ins.*, 926 F. Supp. at 99 (state court plaintiff claimed permanent disfigurement for injury to eyes and face).

The above-referenced damages and injuries claimed in the underlying tort suits show that Colony's potential liability under the Subject Policy for either suit exceeds $75,000.  Thus, section 1332(a)'s amount in controversy requirement is met even

without looking at the defense costs Colony would be required to expend in defending either suit. *See Riggingpro, Inc. v. Clarendon Am. Ins. Co.*, 2009 WL 781039, at *2 (S.D. Tex. Mar. 23, 2009) (taking costs of defending insured into consideration in determining amount in controversy). Therefore, the defendants' 12(b)(1) motion shall be denied.

**Defective Proofs of Service of Process**

The Ropers defendants also request dismissal due to allegedly defective Proofs of Service. That request fails for several reasons. First, Rule 4 provides that "Failure to prove service does not affect the validity of service." Fed. R. Civ. P. 4(l)(3). Two leading treatises have recognized that the Rule means what it says. *See* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1130 (3d ed. 2010) ("This provision prevents a defendant who has been properly served from attacking the validity of service on the technical ground of the process server's failure to make return in timely fashion or because the return is deficient in some way."); Mary P. Squiers, *Moore's Federal Practice* § 4.104 (3d ed. 2010) ("Service of process, if otherwise properly executed, will not be rendered defective if plaintiff fails to file proof of service with the court."). Courts have also taken notice of Rule 4(l)(3)'s clear meaning. *See, e.g., Leal v. Computershare*, 2010 WL 4038609, at *3 (D. Nev. Sept. 28, 2010) (failure to file affidavit of service irrelevant in light of Rule 4(l)(3); *Stephens v. Ga. Dep't of Transp.*, 2009 WL 3747167, at *3 (M.D. Ga. Nov. 4, 2009) ("filing of the proof of service is merely a ministerial act and . . . the failure to timely file . . . proof does not operate to extinguish a cause of action"); *Worrell v. Houston Can! Academy*, 2008 WL 818333, at *2 (S.D. Tex. Mar. 25, 2008) (dismissing argument that "Plaintiff's proof of service was

not made by affidavit" pursuant to Rule 4(l)(3)).  Indeed, the Ropers defendants do not

contend that Colony failed to serve its registered agent with process.  Instead, they

request dismissal because the original Proofs of Service all named Roper's Rockin'

Country, LLC.  Rule 4(l)(3) and the above-cited authorities preclude dismissal on this

basis.

 Further, misnomers of the type the defendants complain do not warrant

dismissal.  Defendants "'should not be permitted to take advantage of a mere misnomer

that injured no one.'"  *Estate of White v. Hartford Life & Accid. Ins. Co.*, 2007 WL

7217079, at *2 (S.D. Tex. Oct. 11, 2007) (quoting *Grandey v. Pacific Indem. Co.*, 217

F.2d 27, 29 (5th Cir. 1954) (citing *United States v. A.H. Fischer Lumber Co.*, 162 F.2d

872 (4th Cir. 1947)).  "Defects in the summonses 'are not fatal if they do not prejudice

the defendant.'"  *Pharmerica, Inc. v. DSJ Healthcare, Inc.*, 2010 WL 4962974, at *3

(E.D. Tex. Oct. 22, 2010) (quoting *Warfield v. Byron*, 137 Fed. Appx. 651, 655 (5th Cir.

2005) (other citations omitted).  The summonses served on Ropers' registered agent for

service of process accurately distinguish between each Ropers entity.  Thus, Ropers

was in no way prejudiced by the fact that two of the Proofs of Service contained

misnomers.  The absence of any prejudice to Ropers is evidenced by Ropers' initial

acknowledgment that "Defendants were served on or about January 15, 2011."  If minor

defects in summonses fail to support dismissal, *see Estate of White*, 2007 WL 7217079,

at *2; *Pharmerica, Inc*, 2010 WL 4962974, at *3, then Ropers' reliance on defects in

proofs of service should be similarly rejected.  *Cf. Quilling v. Stark*, 2006 WL 1683442,

at *4 (N.D. Tex. June 19, 2006) ("misnomer on return of service not fatal where

defendant had been served and was not prejudiced by mistake") (citation omitted).

Finally, all three Ropers entities have been effectively served with process. James Rahaim is the registered agent for service of process for each Ropers entity Defendant.  On January 15, 2011, process server Brad Fowler personally served James Rahaim with three copies of the Complaint and a separate Summons for each Ropers entity Defendant.  Although two of the Proofs of Service executed by Mr. Fowler contained misnomers, Mr. Fowler has executed corrected Proofs of Service remedying this inadvertent error.  The sworn affidavit of Mr. Fowler establishes proper service as to each Ropers entity and controls over the legal arguments of Ropers' counsel made in support of dismissal.  *See D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 457 (5th Cir. 2010) ("arguments by counsel are not evidence").

IT IS THEREFORE ORDERED AND ADJUDGED that  Motion to Dismiss **[#9]** filed on behalf of of Ropers of Hattiesburg, LLC; Ropers' Rockin' Country, LLC; Ropers of Hattiesburg, Inc. is denied.

SO ORDERED AND ADJUDGED, this the 29th day of March, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE